```
     IN THE UNITED STATES DISTRICT COURT
  FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                AT BLUEFIELD
```

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 1:19-00160

JEFFREY WILLIAM SEXTON, JR.


**MEMORANDUM OPINION AND ORDER**

Defendant, Jeffrey William Sexton, Jr., is charged in a single count indictment alleging he violated 18 U.S.C. §2423(b) and (e), which criminalizes the act of traveling in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person, in this case, a minor, or attempting to do so.

## I. Background[1]

On or about May 28, 2019, an undercover task force officer (TFO) with the FBI's Violent Crimes Against Children Task Force was posing as a minor female on Skout, a mobile device social networking application that allows users to locate and communicate with other individuals located in their general vicinity. While the TFO's profile indicated that she was over 18 years old, the TFO would inform users that she was 13 years old.

The TFO was contacted by a user named "Jeff" who was later identified as defendant. The TFO and defendant communicated with each other on May 28 and 29, 2019, until the TFO's profile was

---

[1] The factual background is taken largely from the government's recitation of facts. See ECF No. 40.

shut down by Skout (presumably after being reported as a minor). On May 30, 2019, the TFO created a new profile using the same persona and defendant again initiated communications with the undercover TFO. When the minor stated that she believed she had previously chatted with defendant using a different account, defendant seemingly remembered her and stated, "Your 13."

On May 31, 2019, defendant contacted the TFO and asked where she lived. The TFO indicated that she was currently in Beckley but would be returning to Bluefield the next day. Late that evening, defendant contacted the TFO's online persona via a different account, stating that he had accounts with both Skout and MeetMe, a sister company providing a similar chat application where users could communicate across both applications. Ultimately, after a lot of back and forth, defendant and the TFO made plans to meet that night at a church parking lot off College Avenue, in Bluefield, West Virginia. Just before 1:00 a.m., on June 1, 2019, defendant drove past the meeting location twice and told the TFO to stand under a light so he could see her. At that time, defendant was stopped by law enforcement and placed under arrest.

Following his arrest, defendant was advised of and waived his Miranda rights and gave a recorded statement. That statement is approximately one hour and 19 minutes long. In the course of that statement, Sexton acknowledged that he understood he was

2

speaking to a 13-year-old girl and that he was the "Jeff" involved in the conversations. He recounted traveling from Virginia to the meeting location in West Virginia. Defendant stated that he had used the Skout/MeetMe applications to find sexual or romantic partners. As for his communications with the TFO regarding oral sex, defendant stated that question was designed to find out if the TFO had intentions that were sexual in nature because, if she did, he would have stopped talking to her. He insisted that he only intended to meet the undercover TFO to listen to music in his car.

A search warrant was later served on The Meet Group, the parent company of MeetMe and Skout, requesting defendant's chats from one of his profiles during the time period of May 28 to June 1, 2019. In response to the search warrant, the government has identified three conversations with individuals other than the TFO that it seeks to offer as evidence in this case. On May 31, 2019, defendant was chatting with two other individuals purporting to be minors ("Unknown User 1" and "Unknown User 2").[2] Also, on the evening of May 31 and into the early morning hours of June 1, defendant was seemingly making plans with an adult

---

[2] On December 4, 2019, counsel for the government informed the court that her further investigation had revealed these conversations with other purported minors were actually with other undercover officers rather than actual minors.

3

female ("Kelley") to travel to her location in Princeton to engage in sexual intercourse.

Pending before the court are defendant's motions to "exclude any messages the defendant allegedly sent to or received from any other person other than the undercover law enforcement officer portraying himself as a minor female" and asking the court to require the government to play defendant's entire statement given to law enforcement should the government elect to utilize the statement. (ECF No. 29). The government filed a response in opposition to defendant's motion, <u>see</u> ECF No. 40, and a hearing on defendant's motions was held on November 5, 2019. At that hearing, the government stated that it intended to play four excerpts of defendant's statement but that defense counsel had been unable to review those statements. Defendant was provided additional time to respond in writing to the identified excerpts and the government was directed to provide a copy of defendant's entire statement to the court.

On November 15, 2019, defendant filed a supplemental response to his motion regarding the government's use of defendant's statement at trial. <u>See</u> ECF No. 46. A week later, on November 22, 2019, the government filed a reply. <u>See</u> ECF No. 47. On December 3, 2019, in response to defendant's proposed jury instruction on entrapment, the government filed a

supplemental response to defendant's pretrial motions. See ECF No. 52. The motions are ripe for decision.

## II. Analysis

A district court's evidentiary ruling are reviewed for abuse of discretion. See United States v. Taylor, 754 F.3d 217, 226 n.* (4th Cir. 2014). An abuse of discretion occurs only when a district court "act[s] arbitrarily or irrationally in admitting evidence." United States v. Williams, 445 F.3d 724, 732 (4th Cir. 2006).

A. *Chats with Unknown User 1, Unknown User 2, and Kelley*

Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accord with the character." Fed. R. Evid. 404(b). Such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. To be admissible, the evidence must be "(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable." United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004) (citing United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)). "Additionally, the probative value of the evidence must

not be substantially outweighed by the danger it will cause unfair prejudice."  Id.

Evidence of other bad acts also "may be introduced if it concerns acts `intrinsic to the alleged crime' because evidence of such acts do[es] not fall under Rule 404(b)'s limitations' to begin with."  United States v. Otuya, 720 F.3d 183, 188 (4th Cir. 2013) (quoting United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996)).  Evidence is intrinsic "if it arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime (on) trial."  United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (citations omitted).  "Evidence is [also] intrinsic if it is necessary to provide context relevant to the criminal charges."  United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009) (quotation and citation omitted).

The government argues that the three chat transcripts with individuals other than the TFO are intrinsic to the crime charged and, therefore, admissible.  In the alternative, the government also argues that the evidence would be admissible under Rule 404(b).

The court agrees with the government that the three chat transcripts are intrinsic to the crime charged herein because they are necessary to "complete the story" and "provide context relevant to the criminal charges."  Defendant used Skout and

6

MeetMe to communicate with the TFO purporting to be a 13-year-old girl. At the same time, he was also chatting with three other individuals, two of whom claimed to be minors. In the third chat with Kelley, Sexton suggests that he could meet up with her for sexual activity and Kelley indicates her willingness to meet him. As the government noted,

> These simultaneous chats provide context for defendant's chats with the purported 13-year-old and complete the story of the crime. They demonstrate the purpose and intent for defendant's use of the MeetMe application at the time he was arranging to meet with the minor. The chats with the purported minor did not occur in isolation. These chats are relevant and probative to demonstrate the scope of defendant's MeetMe activities on May 31, 2019, into the early morning hours of June 1, 2019.

ECF No. 40 at p. 10.

"Evidence may be excluded under Rule 403 only if the evidence is <u>unfairly</u> prejudicial and, even then, only if the unfair prejudice <u>substantially</u> outweighs the probative value of the evidence." <u>United States v. Byers</u>, 649 F.3d 197, 210 (4th Cir. 2011) (quoting <u>United States v. Siegel</u>, 536 F.3d 306, 319 (4th Cir. 2008)) (emphasis in original); <u>see also</u> <u>United States v. Zahursky</u>, 580 F.3d 515, 525 (7th Cir. 2009) ("That evidence may be highly prejudicial does not compel its exclusion; the evidence must be <u>unfairly</u> prejudicial.")(emphasis in original). "[U]nfair prejudice exists `when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the

7

offered evidence.'" Byers, 649 F.3d at 210 (quoting Siegel, 536 F.3d 319). "Generally speaking, "bad acts" evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence `did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'" Id. (quoting United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995)). In this case, the court cannot find that the probative value of the three chats with individuals other than the TFO is substantially outweighed by unfair prejudice. The three chats with Unknown User 1, Unknown User 2, and Kelley does not involve conduct more sensational or disturbing than the crime with which defendant is charged. Furthermore, any prejudice can be abated by a proper limiting instruction.

In order to establish the offense proscribed by 18 U.S.C. §§ 2243(b) and (e), the United States has to prove that defendant traveled in interstate commerce <u>with the intent</u> to engage in illicit sexual conduct with a person under 18 years of age. "[E]vidence is relevant if it is sufficiently related to the charged offense. . . . The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." United States v. Cowden, 882 F.3d 464, 472 (4th Cir. 2018) (stating that other acts evidence was properly admitted where it was probative of defendant's state of mind at the time he

8

committed offense of conviction). Therefore, even if the other chats are extrinsic to the crime charged, they are still properly admitted under Rule 404(b).

First, the evidence is not improper character evidence but, rather, is highly relevant to defendant's intent in traveling across state lines. See United States v. Davenport, 149 F. App'x 536, 538 (7th Cir. 2005) (concluding that district court did not abuse its discretion in prosecution under 18 U.S.C. § 2423(a) in admitting evidence of defendant's Internet "chats" with minor other than victim because such evidence helped jury evaluate defendant's intent); United States v. Rojas, 145 F. App'x 647, 650 (11th Cir. 2005) (affirming the admissibility of the defendant's sexually explicit online chats with a minor under Rule 404(b) as relevant to show the defendant's intent to engage in sexual activity with another minor). Furthermore, given defendant's stated defense that he only wanted to meet the TFO to listen to music, his contemporaneous highly sexual conversation with Kelley, although not identified as a minor, is relevant to his intent. See United States v. Zahursky, 580 F.3d 515, 525 (7th Cir. 2009) (holding that evidence of other chats was admissible to rebut defendant's "claims at trial as to why he chatted with Shelley about sex—to get minors to leave adult chat rooms; and why he drove to the Starbucks—not for coffee and not to meet Shelley for sex, but out of curiosity as to whether she

was a college student or cop.  This evidence also was admissible to rebut [defendant]'s denial that he intended to have sex with a minor.  Accordingly, this evidence was admissible to prove [defendant]'s motive, intent, knowledge, and absence of mistake.")

> [C]ourts must determine whether prior bad acts evidence is "necessary" under Rule 404(b) in light of other evidence available to the government.  Thus, as to the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases.

Byers, 649 F.3d at 209 (internal citations and quotations omitted).  In the instant case, the non-Rule 404(b) evidence regarding defendant's intent in traveling in interstate commerce is not uncontradicted.  And, as noted above, defendant's intent is an element of the crime charged.  Therefore, the evidence is "necessary" as required by Rule 404(b).  Id. ("Logically, then, when the evidence presented to the jury generates uncertainty about motive or identity, resort to other crimes evidence may be appropriate.") (internal alterations, citation, and quotation omitted).

Finally, the evidence is reliable and, as the court has already stated, it is not so unfairly prejudicial that it outweighs its probative value.  For all these reasons, defendant's motion to exclude the chat with Unknown User 1, Unknown User 2, and Kelley is **DENIED**.

B.  *Defendant's Statement*

As noted above, after his arrest, defendant provided a statement to law enforcement that was videotaped. That statement is more than an hour. The United States seeks to introduce four excerpts totaling approximately 4.5 minutes from that statement, all of which occur within the first 20 minutes. Defendant argues that the entire statement should be played for the jury whereas the government argues that defendant cannot rely on the rule of completeness to admit his self-serving hearsay testimony.

A recent decision from the District of Maryland provides a comprehensive discussion of the intersection of various rules that might affect the court's resolution of this issue. See United States v. Bailey, Criminal No.: PWG-16-0246, 2017 WL 5126163 (D. Md. Nov. 6, 2017).

> Whether the defendant in a criminal trial may compel the Government to introduce his exculpatory statements at the same time that it introduces his inculpatory ones implicates a number of evidentiary rules, including Rules 102 (which instructs judges to interpret the rules of evidence in order to insure fairness, ascertain the truth, and to secure a just determination), 106 (the so-called "rule of completeness"), 404 (relevance), 403 (probative value versus danger of unfair prejudice or confusion); 611(a) (court control over the examination of witnesses and presentation of evidence); and 802 (the rule against admissibility of hearsay, and its exceptions). . . . As will be seen, although there is no shortage of case law and treatise analysis on this subject, the law is far from settled, and courts and commentators have reached starkly different results by applying a variety of approaches, resulting in an evidentiary landscape that is unclear.

11

Id. at *1.

The common-law doctrine of completeness has been partially codified in Rule 106 of the Federal Rules of Evidence." United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996). That rule provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The Advisory Committee Note to Rule 106 states that:

> The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial. The rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case.

Fed. R. Evid. 106 advisory committee's note to 1972 proposed rules (citation omitted). "Conspicuously absent from the Rule or the Advisory Note is any indication of whether completing information can be admitted under Rule 106 even if otherwise inadmissible (for example, because it is hearsay)." Bailey, 2017 WL 5126163 at *4.

The Bailey decision goes on to note that the courts have reached different results in answering this question. See id.[3]

---

[3] The Fourth Circuit has made clear that a common law rule of completeness (should one survive Rule 106's codification) cannot "be used to justify the admission of inadmissible

12

Bailey contends that a focus on Rule 106's fairness requirement should guide the court's analysis in this regard:

> Perhaps courts' willingness to restrict the use of Rule 106 to admissible evidence reflects the same concern expressed by the Department of Justice when it objected to the revision of the rule in 2002 to permit the use of inadmissible evidence. DOJ "prosecutors argued that amending the Rule would allow defense counsel to make bogus claims that the evidence was taken out of context so that they could get inadmissible evidence before the jury." 21A Wright & Graham, supra, § 5071. Fair enough. But it is just as much an abuse of the adversary system for the prosecution to paint a misleading picture to the jury by introducing out-of-context inculpatory statements by the defendant as it is for a defense attorney to assert "bogus" claims that prosecution evidence was taken out of context as a pretext to "correct" the record by introducing otherwise inadmissible evidence. And it does not answer to prevent the later abuse but permit the former. Moreover, proper application of the "fairness" requirement of Rule 106 should prevent the abuses that the Department of Justice feared because judges should restrict application of Rule 106 to those situations where misleading information actually was introduced by the prosecution and allow only such correcting evidence as is necessary to counteract it. In this regard, courts and commentators have identified various factors that go a long way towards preventing any abuse of Rule 106 that might occur if inadmissible evidence is allowed to complete the record.
>
> To begin with, Rule 106 should never come into play unless misleading evidence has been introduced that requires clarification or explanation—otherwise there is no unfairness that needs correction.

---

hearsay." United States v. Oloyede, 933 F.3d 302, 314 (4th Cir. 2019) (district court did not abuse its discretion in admitting inculpatory portions of a post-arrest statement given by defendant while excluding as untrustworthy hearsay other portions). Likewise, "Rule 106 does not . . . however, `render admissible the evidence which is otherwise inadmissible under the hearsay rules.'" United States v. Lentz, 524 F.3d 501, 526 (4th Cir. 2008) (quoting Wilkerson, 84 F.3d at 696).

> Wilkerson, 84 F.3d at 696 ("Thus, the rule of completeness . . . would not appl[y] . . . where there was no partially introduced conversation that needed clarification or explanation."). And, judges need not take at face value exaggerated claims that a partially introduced statement requires completion unless it can be shown with some precision just how the incomplete evidence is taken out of context.

Id. at *6.[4]

---

[4] Bailey identifies a number of "factors that help courts identify when the fairness requirement of Rule 106 has been met." Id. These factors include:

> (1) Is the proffered evidence taken out of context (does what is missing change the meaning of what was introduced)? (2) Does the lack of context make the evidence misleading (does the admitted evidence "invite" or "permit" a false premise)? (3) Can the misleading impression be dispelled by other means (for example, by instructing the jury not to draw the misleading inference, or by permitting introduction of completing evidence at a later time, such as during cross examination or the defense case, so as not to interrupt the presentation of the prosecution's case)? (4) How much evidence is needed to dispel misleading effects (lawyers should be precise in identifying the information actually needed to correct the misleading impression created by the incomplete evidence, and judges should be skeptical about allowing expansive introduction of lengthy excerpts from writings or recordings under the guise of "correcting" a misimpression)? (5) How strong is the evidence admitted and omitted (how does the strength of the admitted evidence compare to the strength of the omitted evidence—a minor discrepancy does not require "correction" with a massive introduction of information of little probative value)? (6) How long will repair be delayed if not accelerated (if the completing information is not introduced during the prosecution's case, can the defendant effectively dispel any misleading impression during cross examination or during his case in chief, or will the damage, once done, be irremediable if not immediately addresse[d])? (7) What is the consequential fact to be proved (if the misimpression goes to an essential element of the

14

In this case, defendant has failed to adequately explain how the excerpts from his statement that the United States seeks to offer at trial are misleading. Having listened to the entire statement, the court cannot conclude that the excerpts are inherently misleading. Furthermore, defendant does not identify the specific portions of that statement that would clarify or explain the allegedly misleading statements. See id. ("[L]awyers should be precise in identifying the information actually needed to correct the misleading impression created by the incomplete evidence, and judges should be skeptical about allowing expansive introduction of lengthy excerpts from writings or recordings under the guise of `correcting' a misimpression[.]"). Therefore, under these circumstances, Rule 106's fairness requirement does not lead the court to conclude

---

    prosecution's case—such as the defendant's motive or intent—then there is a more exigent need to insure immediate correction than exists if the incomplete information is primarily relevant to a less critical issue, such as an assessment of a witness's credibility)? (8) How much will completion disrupt or prejudice the proponent (the more disruptive the immediate completion will be of the proponent's case, the more cautious the court should be before allowing it at that time)? And (9) does truncation or completion implicate constitutional rights (if the prosecution introduces incomplete portions of a defendant's confession that, if not completed by introducing other parts of the confession, would require the defendant to waive his Fifth Amendment right not to testify)?

Id. (citing 21A Wright & Graham, supra, § 5077.2).

that defendant's entire 79-minute statement needs to be played in order to explain or clarify the 4.5 minutes of excerpts that the government seeks to introduce at trial.  This is especially true in light of the fact that the statement contains inadmissible hearsay that, under Fourth Circuit precedent, should not be admitted, see Lentz and Oloyede, and defendant has not offered any exception to the hearsay rule that would govern its admissibility.

Nor is the court persuaded by defendant's more specific arguments regarding the four excerpts.  See ECF No. 46.  With respect to the first and fourth clips, the court does not agree that they would be confusing to the jury.  As for the second clip, defendant has not shown how the clip is misleading.  Concerning the third clip, the court disagrees with defendant that the clip is irrelevant and unfairly prejudicial.[5]

Based upon the foregoing, defendant's motions in limine are **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record and to the Probation Office of this court.

---

[5] Defendant has argued that a limiting instruction stating that it is not illegal to communicate with a minor should be provided.  The government does not oppose such an instruction.  Counsel should provide such an instruction prior to trial.

IT IS SO ORDERED this 17th day of December, 2019.

    ENTER:

_David A. Faber_
David A. Faber
Senior United States District Judge